IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

JASON MICHAEL CLARK, ex rel Conservator
RICHARD GARY CLARK,

*Plaintiff,*

FENTRESS COUNTY,
SHERIFF MICHAEL REAGON,
CANDY NORMAN a/k/a CANDY PRICE,
FAST ACCESS HEALTHCARE, PLLC,
ANTHONY BAIRD, and
NERISSA OWENS

*Defendants.*

Case No.

JURY DEMANDED

## COMPLAINT

Comes now the Plaintiff, JASON CLARK, ex rel Conservator Richard Gary Clark, by undersigned counsel and for his complaint against the Defendants states the following:

### Introduction

1. Jason Clark recently found himself a prisoner in "Candyland," as the Fentress County Jail was colloquially known during the reign of jail administrator Candy Norman. In Candyland, inmates are subject to the whims of a Sheriff who permits correctional officers to freely disregard serious medical needs, especially those of drug addicts. Prescription medication is poorly documented and discretionarily administered. Placing an inmate like Jason Clark who suffers from seizures on an

elevated bunk over a concrete floor seems perfectly normal to those in charge. While withdrawing from benzodiazepines and deprived of his anti-seizure medication, Jason Clark fell from an elevated bunk and cracked his skull. As blood filled his head and ran out of his ears, he writhed in pain until he fell unconscious. He will likely never walk, talk, or share a meal with his family again. These Defendants are responsible for the horrors in Candyland.

### Jurisdiction and Venue

2. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by federal statutes and the Constitution of the United States of America.

3. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States of America and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

4. Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

5. Plaintiff further asserts claims for relief under 42 U.S.C. § 12132, which prohibits discrimination on the basis of disability by public entities and 42 U.S.C. § 12133 which provides the private right of enforcement to plaintiffs suffering

2

discrimination on the basis of disability.

6.      This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more defendants reside in this judicial district. Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## Parties

7.      Plaintiff Jason Clark is an adult resident of Fentress County, Tennessee.

8.      Defendant Michael Reagon is the Sheriff of Fentress County, Tennessee.

9.      Defendant Fentress County is a political subdivision of the State of Tennessee.

10.      Defendant Fast Access Healthcare, PLLC ("FAH") is a limited liability company whose principal place of business is located on 2372 Lifestyle Way Ste 152 Chattanooga, TN 37421. FAH is the third-party medical provider for the Fentress County Sheriff's Department and may be served through its registered agent, Northwest Registered Agent, Inc., 116 Agnes Rd., Suite 200, Knoxville, Tennessee 37919.

11.      Defendant Anthony Baird is a physician's assistant employed by FAH and who provides medical services to inmates within the Fentress County Jail. He is a resident of Anderson County, Tennessee and is responsible for the medical care and treatment of inmates at the Fentress County Jail.

12.      Defendant Candy Price, a/k/a Candy Norman is a resident of Fentress County, Tennessee and is the former jail administrator at the Fentress County Sheriff's Department.

3

13. Defendant Nerissa Owens is a licensed practical nurse employed by FAH and who provides medical services to inmates within the Fentress County Jail. She is a resident of Fentress County and she is responsible for the medical care and treatment of inmates at the Fentress County Jail.

## Factual Allegations

14. Jason Clark suffers from a seizure disorder that produces grand mal seizures.

15. Jason Clark is prescribed levetiracetam to manage this condition and his seizures.

16. Jason Clark has a history of alprazolam dependence and withdrawal.

17. Withdrawal from benzodiazepines such as alprazolam can cause seizures.

18. The Fentress County Jail routinely incarcerates individuals suffering from benzodiazepine withdrawal.

19. Jason Clark was booked into the Fentress County Jail on September 1, 2015.

20. On September 1, 2015, Jason Clark's inmate medical intake form indicates:

| Yes | Does the imate report to be on any medications that should be available? | 11 |
| --- | --- | --- |
| | oxycodone, xanax. He will withdrawal | |

21. On February 16, 2016, Jason Clark was booked into the Fentress County Jail.

22. On February 16, 2016, Jason Clark's inmate medical intake form indicates:

| | | |
|---|---|---|
| Yes | Has the inmate fainted recedntly or had a recent head injury<br>**had seizure in december** | 21 |

23. On May 26, 2017, Jason Clark was booked into the Fentress County Jail.

24. On May 26, 2017, Jason Clark's inmate medical intake form indicates:

| | | |
|---|---|---|
| Yes | Does the imate report to be on any medications that should be available?<br>**seizure keppra** | 11 |

25. On March 21, 2023, Jason Clark was arrested and booked into the Fentress County Jail on a misdemeanor charges of DUI 2nd, Simple Possession of Schedule II, Simple Possession, Possession of Drug Paraphernalia, and Driving on Suspended License.

26. Incident to his arrest, Fentress County Sheriff's Deputies found Jason Clark in an intoxicated state and in possession of alprazolam.

27. On March 21, 2023 As part of the booking process, Jason was screened by the Fentress County Jail medical staff.

28. On March 21, 2023 Jason Clark completed an intake medical form as part of the screening by the Fentress County Jail's medical staff where he disclosed the following:

| | | |
|---|---|---|
| Y | Are there any medications that you have been prescribed in the last 90 days that we need to make available to you?<br>**KEPRA** | 11 |
| N | Have you ever received treatment for mental illness? | 11 |
| Y | Is the inmate on medication for diabetes, heart disease, or seizures?<br>**KEPRA** | 12 |

29. The March 21, 2023 intake medical form indicates that Jason Clark has a

Case 2:23-cv-00042    Document 1    Filed 07/20/23    Page 5 of 26 PageID #: 5

history of seizures and has been prescribed Keppra (the brand name version of levetiracetam) to manage this condition.

30. Based on Jason Clark's seizure disorder, history of alprazolam withdrawal, and with his possession of alprazolam, he was at high risk for seizures at the time he was booked into the Fentress County Jail on March 21, 2023.

31. On March 21, 2023, Defendant Anthony Baird made the following entry into Jason Clark's inmate medical record:

32. As indicated in Defendant Baird's notation, on March 21, 2023, Dr. Richard Gary Clark, a licensed physician, and the father of the plaintiff, delivered Jason Clark's prescription levetiracetam to the jail staff.

33. Dr. Richard Clark explained that the medication was for Jason Clark's seizure disorder and that it was necessary to administer the medication as prescribed in order to mitigate the risk of Jason Clark experiencing seizures.

34. The jail staff delivered the levetiracetam to jail administrator Candy Norman and conveyed to her the information provided by Dr. Richard Clark.

35. During Candy Norman's tenure as jail administrator at the Fentress County Sheriff's Department, including the time period Jason Clark was incarcerated

6

there, she was actively and intimately involved in the day-to-day operations of the jail and involved herself with the provision of medications brought by family members for inmates.

36. The Fentress County Jail has concrete floors.

37. The bunks in the Fentress County Jail contain three bed platforms each.

38. The bunks in the Fentress County Jail pose an obvious risk of serious injury to inmates who are prone to seizures.

39. Defendant Michael Reagon, as the elected sheriff of Fentress County, possesses final decisionmaking authority over the policies and procedures of the Fentress County Jail pertaining to the conditions of inmate confinement.

40. Defendant Michael Reagon, as the elected sheriff of Fentress County, possesses final decisionmaking authority over policies governing correctional officers' implementation of medically ordered accommodations at the Fentress County Jail.

41. Defendant Michael Reagon knew that inmates with seizure disorders were routinely incarcerated at the Fentress County Jail.

42. Defendant Michael Reagon knew that inmates were routinely incarcerated at the Fentress County Jail who were withdrawing from substances including benzodiazepines and were thus at a heightened risk for seizures.

43. Defendant Michael Reagon knew or had reason to know that the bunks at the Fentress County Jail presented a risk of severe harm to inmates at heightened risk of seizures.

44. Defendant Michael Reagon, as Sheriff of Fentress County, failed to

7

establish any written policy or procedure to ensure that medical orders directing bunk assignments were adequately communicated to officers responsible for oversight of inmate bunks.

45. Defendant Michael Reagon, as Sheriff of Fentress County, failed to establish any written policy or procedure to ensure that accommodations were made for inmates suffering from seizure disorders.

46. Defendant Michael Reagon, as Sheriff of Fentress County, failed to establish any written policy or procedure to ensure that accommodations were made for inmates who were at high risk for seizures due to substance withdrawal.

47. Defendant Michael Reagon knew that inmates with seizure disorders were directed by his correctional staff to sleep on elevated beds over a concrete floor.

48. Defendant Michael Reagon knew that inmates at risk for withdrawal-induced seizures were directed by his correctional staff to sleep on elevated beds over a concrete floor.

49. Defendant Michael Reagon maintained a custom whereby correctional staff were permitted to disregard medically ordered accommodations including bunk assignments.

50. Defendant Michael Reagon maintained a custom whereby correctional staff routinely ignored the serious medical needs of inmates including Jason Clark in ways including but not limited to:

    a) Failing to implement any policy or procedure to assure medically-ordered accommodations including bunk assignments were actually

implemented by correctional officers;

b) Maintaining a custom whereby inmate medical accommodation orders were disregarded by non-medical correctional staff;

c) Failure to train correctional officers to ensure medically ordered accommodations were implemented within the Fentress County Jail;

d) Failing to implement any written policy applicable to bunk assignments at the Fentress County Jail, despite the obvious danger posed by the bunks to inmates at risk of seizures;

e) Failing to train correctional officers regarding the obvious risk of injury posed by the bunks at the Fentress County Jail to inmates at risk of seizures, despite the routine frequency with which such inmates were incarcerated at the Fentress County Jail;

f) Failing to train correctional officers regarding the obvious risk of withdrawal-induced seizures from offenders arrested while intoxicated and in possession of benzodiazepines;

g) Failure to supervise correctional officers to ensure that they followed medical orders that required implementation within the jail's living environment including bunk assignments;

h) Failure to train correctional officers to follow medical orders issued concerning inmate medical accommodations;

i) Failing to provide safe sleeping accommodations for inmates at known risk for seizures within the Fentress County Jail, despite the routine

9

frequency with which such inmates were incarcerated at the Fentress County Jail;

j) Acquiescing and approving of the conduct of correctional officers who fail to implement medical orders concerning inmate medical accommodations by:

i. Failing to investigate claims concerning correctional officers' non-implementation of medically ordered accommodations;

ii. Failing to discipline correctional officers who disregard medically ordered accommodations, despite awareness of their disregard.

51. Defendant Michael Reagon knew or had reason to know that the bunks at the Fentress County Jail posed an excessive risk of injury to inmates at risk for seizures including Jason Clark.

52. Defendant Michael Reagon consciously disregarded the excessive risk of injury posed by the bunks at the Fentress County Jail to inmates at known risk for seizures including Jason Clark.

53. Defendant Candy Norman had actual knowledge of Jason Clark's seizure disorder.

54. Defendant Candy Norman knew that inmates with seizure disorders including Jason Clark were directed by correctional officers under her command to sleep on elevated beds over a concrete floor.

55. Between March 21, 2023 and April 1, 2023, Defendant Candy Norman

directly supervised the correctional officers who made bunk assignments and she was personally delegated with the authority to manage bunk assignments.

56. Defendant Candy Norman, despite a complete lack of medical training, exercised control over the administration of medications to inmates.

57. Defendant Candy Norman exercised such granular control over the daily operations (including inmate medical care) at the Fentress County Jail that inmates commonly referred to the jail as "Candyland."

58. Defendant Candy Norman took pleasure in exercising control over inmates' medical care and prescription medication.

59. Inmates routinely suffered and complained of complications based on Defendant Norman's denial of access to prescription medications.

60. Defendant Reagon approved of Defendant Norman's control over inmate medical care and knew of the regular complaints of complications experienced by inmates whose medical treatment plans had been interfered with by Defendant Norman.

61. Defendant Candy Norman knew that inmates at risk for withdrawal-induced seizures, including Jason Clark, were being directed by correctional officers under her command to sleep on elevated beds over a concrete floor.

62. Defendant Candy Norman knew that the bunks at the Fentress County Jail posed an excessive risk of injury to inmates at known risk for seizures, including Jason Clark.

63. Defendant Candy Norman consciously disregarded the known risk of serious injury posed by the bunks at the Fentress County Jail to Jason Clark.

64. Defendant Nerissa Owens is a licensed practical nurse employed by FAH to provide medical care to the inmates at the Fentress County Jail.

65. Defendant Nerissa Owens was responsible for providing medical care to Jason Clark between March 21, 2023 and April 1, 2023.

66. Defendant Nerissa Owens had actual knowledge of Jason Clark's seizure disorder.

67. Defendant Nerissa Owens knew that inmates with seizure disorders were directed by correctional officers at the Fentress County Jail to sleep on elevated beds over a concrete floor.

68. Defendant Nerissa Owens knew that inmates at risk for withdrawal-induced seizures were directed by correctional officers at the Fentress County Jail to sleep on elevated beds over a concrete floor.

69. Defendant Nerissa Owens knew or had reason to know that failure to implement Jason Clark's medically ordered bunk assignment posed an excessive risk of injury.

70. Defendant Nerissa Owens knew that failure to properly administer Jason Clark's anti-seizure medication posed an excessive risk of injury.

71. Defendant Nerissa Owens knew that Jason Clark's bunk accommodation was not being implemented by correctional officers.

72. Defendant Nerissa Owens knew that Jason Clark's medication was not being administered as prescribed.

73. Defendant Anthony Baird completed Jason Clark's intake paperwork and

12

had actual knowledge of Jason Clark's seizure disorder.

74. Defendant Anthony Baird knew or had reason to know that recording a bunk accommodation in an inmate's medical file did not effectively communicate that need to the correctional officers who made bunk assignments.

75. Defendant Anthony Baird knew or had reason to know that inmates with seizure disorders were routinely directed by correctional officers at the Fentress County Jail to sleep on elevated beds over a concrete floor, regardless of his medically ordered bunk accommodations.

76. Defendant Anthony Baird knew or had reason to know that inmates at risk for withdrawal-induced seizures were directed by correctional officers at the Fentress County Jail to sleep on elevated beds over a concrete floor.

77. Defendant Anthony Baird knew that failure to implement Jason Clark's medically ordered bunk assignment posed an excessive risk of injury.

78. Defendant Anthony Baird knew that failure to properly administer Jason Clark's anti-seizure medication posed an excessive risk of injury.

79. Although Defendant Anthony Baird noted the need for a bottom bunk assignment in Jason Clark's medical file, he failed to communicate this information or take any action to ensure that the correctional officers or the nurses at the Fentress County Jail were aware of or would implement this assignment.

80. Defendant FAH contracts with Fentress County for the provision of medical services to inmates housed at the Fentress County Jail.

81. As a result of FAH's contract with Fentress County, FAH is subject to the

13

same constitutional obligations to inmates as the County.

82. Section 2.12 of FAH's contract with Fentress County states that "FAH operates within the COUNTY's policies and procedures."

83. Section 2.5 of FAH's contract with Fentress County, Facility Staff Training, states that:

> "The duty to train the FACILITY staff is and always remains vested in the COUNTY. Upon request of the COUNTY, FAH may assist in training for FACILITY staff on certain topics as determined by the COUNTY. The COUNTY is solely responsible for overall operation of the FACILITY, including medical care. The COUTY maintains ultimate responsibility for training and supervising its correctional officers, including but not limited to emergency procedures, ensuring sick calls are passed along to the medical team, and properly distributing medications (where appropriate)."

84. Section 3.1 of FAH's contract with Fentress County provides:

> "It is ultimately the responsibility of the COUNTY to appropriately fund the FACILITY's healthcare program. As a result, FAH's healthcare program at the FACILITY (staffing, etc.) is customized and approved by the COUNTY."

85. FAH fails to provide training to its employees, including Defendant Baird and Defendant Owens, regarding the essential knowledge, tools, preparation, and authority to respond to the recurring medical needs of prisoners in the jail setting.

86. FAH does not maintain any ongoing training program for the licensed practical nurses it employs to provide jail medical services.

87. FAH provides no training concerning monitoring or implementation of medical accommodation orders to the licensed practical nurses it employs.

88. FAH maintains a custom whereby no supervision or monitoring is conducted to ensure the implementation of medical accommodations including bunk assignments.

14

89.   Beyond the initial inmate medical intake screening, FAH relies almost entirely on licensed practical nurses to provide medical care to inmates at the Fentress County Jail.

90.   FAH fails to provide any training about the constitutional obligations of jail medical providers to the licensed practical nurses it employs at the Fentress County Jail.

91.   FAH employees routinely fail to monitor the implementation of orders for medical accommodations contained in inmate's medical files because FAH maintains a custom of failing to monitor the implementation of such accommodations.

92.   FAH fails to implement any standardized protocols to identify inmates at risk from substance withdrawal induced seizures despite the obvious risk of harm posed to these inmates.

93.   None of the defendants or any other correctional officers ensured that Jason Clark's medically necessitated bunk assignment was implemented.

94.   Jason Clark was assigned to the middle bed of a three-bed bunk over a concrete floor.

95.   From March 21, 2023 through March 31, 2023, Jason Clark's medication administration record indicates that he was not administered his levetiracetam as prescribed:

MEDICATION SHEET - ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Levetiracetam | AM | | | | | | | | | | | | | | | | | | | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 750mg TT B/D | PM | | | | | | | | | | | | | | | | | | | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

96. Early in the morning of April 1, 2023, Jason Clark was sleeping in a middle bed of a three-bed bunk over a concrete floor in the Fentress County Jail.

97. At approximately 6:50 AM, Jason Clark experienced a seizure and fell from his bed onto the concrete floor.

98. At approximately 6:55 AM, Officer Shelters radioed the intake nurse to report Jason Clark was found on the floor and may have had a seizure.

99. Officer Shelters informed Nurse Nerissa Owens that Jason Clark appeared confused and that his pupils were reactive to light.

100. Jason Clark writhed in delirious agony for several minutes in the booking area while blood pooled in his skull and poured from his ears, nose, and mouth.

101. Nurse Nerissa Owens instructed Officer Shelters to transport Jason Clark to intake for further evaluation.

102. At approximately 7:02 AM, Officer Dalton radioed Nurse Nerissa Owens and reported that Jason Clark was confused and combative.

103. Nurse Nerissa Owens instructed Officer Dalton to do medical monitoring on Jason Clark.

104. Officer Dalton then informed Nurse Nerissa Owens that Jason Clark had hit his head hard and was bleeding from his ears, nose, and mouth.

105. Nurse Nerissa Owens then advised Correctional Officer Dalton to call EMS.

106. At approximately 7:07 AM, EMS arrived at the Fentress County Jail.

107. At approximately 7:41 AM, Jason Clark was transported from the Fentress County Jail.

108. At approximately 10:00 AM on April 1, 2023 Jason Clark arrived at the University of Tennessee Medical Center in Knoxville, Tennessee.

109. Jason Clark was officially furloughed and released from the Fentress County Jail on April 2, 2023.

110. As a result of the fall, Jason Cark suffered from an epidural hematoma, brain compression, a left parietotemporal skull fracture, and acute hypoxic respiratory failure.

111. He was transported directly to the University of Tennessee Medical Center where he was ventilated and intubated.

112. His condition was stabilized for a time, but as of the date of filing this Complaint, Jason Clark is in critical condition at St. Thomas Hospital as a result of complications from his injuries sustained at the Fentress County Jail.

113. Jason Clark has exhibited response to external stimuli, including responding to his mother by puckering his lips so she may apply chap-stick to them, and by blinking an eye in response to verbal prompting.

114. Jason Clark is completely reliant upon others for all daily needs including food and hydration.

115. Dr. Richard Gary was appointed as the conservator for Jason Michael Clark by the Fentress County Chancery Court on June 26th, 2023.

116. Prior to Jason Clark's fall, Fentress County received continuous complaints regarding injuries caused by failures to administer prescription medication and staff's failure to implement medical accommodations.

117. At the time of Mr. Clark's fall, there had been a long-standing custom or practice of improper and inadequate investigations; cover-up of misconduct; and failure to discipline and train deputies and medical staff, as evidenced by all of the above and:

   a) Medical staff routinely failed to adequately communicate medical needs to correctional officers charged with implementing medically necessitated accommodations including bunk assignments for inmates at known risk for seizures;

   b) Medical staff were not present at the Fentress County Jail on weekends to attend to the serious medical needs of inmates including Jason Clark;

   c) Inmates routinely failed to receive prescription medication due to understaffing of medical personnel at the Fentress County Jail;

   d) Nonmedically trained correctional officers including Defendant Norman were delegated with decisionmaking authority concerning the administration of medication and implementation of medically ordered accommodations.

118. Defendants Reagon and Norman were well aware of these problems due to the significantly high number of inmates who complained of and suffered injuries at the

Fentress County Jail based on a failure to receive adequate medical care.

119.     As a result of these defendants' acts and omissions, Jason Clark has suffered serve physical and emotional injuries. The damage to his brain has caused a significant loss of cognitive functioning which severely diminishes his quality of life.

**COUNT I: VIOLATION OF THE RIGHT TO DUE PROCESS
FOURTEENTH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE
42 U.S.C § 1983**

120.     Paragraphs 1 through 117 above are incorporated herein as if fully restated verbatim.

121.     All of the actions and omissions committed by Defendants Reagon, Norman, Owens, and Baird were taken under color of state law because they were each acting under the authority given to them by the government and the acts and omissions were committed within the exercise of their official authority, responsibility, or duties.

122.     The constitutional rights afforded to prisoners who have been convicted of any criminal offense under the Eighth Amendment's Cruel and Unusual Punishment Clause extend to pretrial detainees under the Due Process Clause of the Fourteenth Amendment.

123.     The Fourteenth Amendment to the United States Constitution requires that pretrial detainees be provided adequate medical care while in the custody of any government entity.

124.     Jason Clark's seizure disorder presented an objectively serious medical need that required both medication and a bottom bunk accommodation.

125.     Defendants Norman, Baird, and Owens had actual knowledge of Jason

19

Clark's serious medical need for medication and a bottom bunk accommodation.

126. Defendants Norman, Baird, and Owens disregarded Jason Clark's serious medical need for medication and a bottom bunk accommodation.

127. Defendants Reagon, Norman, Baird, and Owens knew or had reason to know that failure to provide an inmate who suffered from seizures with anti-seizure medication created a substantial risk of harm;

128. Defendants Reagon, Norman, Baird, and Owens knew or had reason to know that assigning an inmate to an elevated bunk despite medical orders that the inmate be assigned to a bottom bunk posed an excessive risk of harm;

129. Defendants Reagon, Norman, Baird, and Owens knew or had reason to know that seizure-prone inmates including Jason Clark were routinely admitted to the Fentress County Jail and were exposed to an excessive risk of harm by the elevated bunks.

130. Fentress County is liable for the policies, customs, and practices implemented by Defendant Reagon because he is the final policymaker for the Fentress County Jail.

131. Fentress County is liable for Sheriff Reagon's ratification of the correctional officers' disregard for medically ordered accommodations.

132. Within the meaning 42 U.S.C. § 1983, FAH acted under color of state law in providing medical care to pre-trial detainees.

133. Fentress County and Sheriff Reagon are liable for the policies, practices, and customs of FAH because Fentress County because they delegated final

decisionmaking authority to FAH concerning the provision of medical care to inmates at the Fentress County Jail.

134. Defendants Reagon, Fentress County, and FAH exhibited deliberate indifference to Jason Clark's serious medical needs by:

a) Maintaining policies, practices, and customs whereby medically ordered accommodations are ignored by correctional staff;

b) Maintaining policies, practices, and customs that allow and cause medical personnel to disregard the serious medical needs of inmates by failing to take reasonable measures to ensure that correctional staff receive critical medical information;

c) Failing to train licensed practical nurses and correctional officers regarding the monitoring and implementation of medically ordered accommodations;

d) Failing to establish policies and procedures whereby critical medical accommodations for detainees are communicated to and implemented by the Sheriff's correctional staff;

e) Failing to establish adequate training, procedures, and supervision to ensure that critical medical accommodations are not just written into an inmate's medical chart but also effectively communicated to and implemented by correctional officers;

f) Maintain customs of acquiescence to the disregard of serious medical needs represented by medically necessitated environmental

accommodations including bunk assignments;

g) Maintaining customs of acquiescence to interference by correctional officers including Candy Norman in the provision of critical medical care to inmates at the Fentress County Jail.

135. Sheriff Reagon, Fentress County, and Fast Access Healthcare are policymakers that are aware of, condone, and facilitate by their inaction, the disregard for inmates' medically necessitated environmental accommodations including bunk assignments within the Fentress County Jail.

136. Fentress County and FAH are liable for deliberate indifference based on their above-described failure to train medical staff and correctional officers.

137. Fentress County and FAH are liable for deliberate indifference based on their above-described failure to supervise medical staff and correctional officers.

138. As a result of the defendants' reckless disregard of Jason Clark's serious medical need, Jason Clark suffered injuries including pain and suffering, permanent physical and mental injuries, emotional distress, loss of enjoyment of life, reduced life expectancy, and pecuniary damages including extensive past and future medical bills.

139. All of Plaintiff Jason Clark's injuries and damages were proximately caused by the County's unconstitutional customs, policies, and procedures.

### COUNT II: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
#### 42 U.S.C. § 12132 *et seq*

140. Paragraphs 1 through 117 above are incorporated as if restated fully verbatim herein.

141. Jason Clark is a disabled person whose major life activity is substantially

limited as a result of his seizure disorder. When suffering a seizure, Mr. Clark cannot speak, walk, sit up, control his bodily movements or care for himself. As a result of his disability, Mr. Clark cannot sleep on an elevated bunk even when given anti-seizure medication.

142. Pursuant to 42 U.S.C. § 12132, "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

143. Under Title II of the Americans with Disabilities Act, public entities are required to make reasonable modifications to avoid discrimination on the basis of disability. The ADA establishes an affirmative requirement to act appropriately with respect to prisoners with disabilities.

144. The ADA creates an affirmative duty in some circumstances to provide special, preferred treatment, or "reasonable accommodation."

145. Facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced.

146. Discrimination includes a defendant's failure to make reasonable accommodations to the needs of a disabled person based on his mental or physical health. These accommodations include specialized training of jail staff, the provision of a heightened level of medical care, and diligent surveillance.

147. In order to safely enjoy the benefit of a bed provided to all inmates, Jason Clark required an accommodation – a bottom bunk due to his chronic seizure disorder.

Defendants Fentress County, Reagon, Norman, FAH, Owens, and Baird failed to make reasonable accommodations to Jason Clark's medical needs based on his seizure disorder. These defendants denied Jason Clark the benefits of the services, programs, or activities they provide.

148. Despite Defendant Baird writing "bottom bunk" in Jason Clark's medical file, no defendant took any action to ensure this information was conveyed to or implemented by the correctional officers who actually set bunk assignments.

149. Despite the individual defendants' personal awareness of Jason Clark's seizure disorder and concomitant need for the accommodation of a bottom bunk, they took no action to check for available bottom bunk or to provide an alternative sleeping arrangement such as a pallet on the floor.

150. The actions and omissions of each defendant described above constitutes intentional discrimination on the basis of disability.

151. But for the Defendants' intentional discrimination against Jason Clark on the basis of disability, he would not have fallen from an elevated bunk and suffered severe injuries.

DAMAGES

152. As a direct and proximate result of the Defendants' violations of his federally protected rights and their reckless disregard to a serious medical need, Plaintiff has suffered:

    a) Pain and suffering

    b) Physical and mental injuries

c) Pecuniary damages including past and future medical expenses

d) Loss of enjoyment of life

e) Reduced life expectancy

f) Serious mental suffering and emotional distress

153. Based on their intentional and reckless misconduct, Jason Clark requests an award of punitive damages against Defendants Reagon, Norman, Baird, and Owens.0

## REQUEST FOR RELIEF

Based upon all of the foregoing, Plaintiff Jason Clark requests:

I. Process be issued and that each Defendant be required to respond within the time provided by the Federal Rules of Civil Procedure;

II. A jury be empaneled to try this case;

III. That a Declaratory Judgment be entered;

IV. That Plaintiff Clark be awarded nominal damages;

V. That Plaintiff Clark be awarded compensatory damages in the amount of twenty million dollars ($20,000,000.00);

VI. That Plaintiff Clark be awarded punitive damages against Defendants Reagon, Norman, Baird, and Owens in an amount deemed appropriate by a jury;

VII. That Plaintiff Clark be awarded reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988;

VIII. For pre- and post-judgment interest on all damages awarded;

25

**IX.** For such other, further, and general relief as the Court deems just and appropriate.

Respectfully submitted,

*s/Wesley B. Clark*
Wesley Ben Clark, #32611
Frank Ross Brazil, #34586
Paul D Randolph #39667
Sarah Mansfield #39476
BRAZIL CLARK, PLLC
2901 Dobbs Avenue
Nashville, TN 37211
615-730-8619
615-634-3651 (fax)
wesley@brazilclark.com
frank@brazilclark.com
paul@brazilclark.com
sarah@brazilclark.com